USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/08/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
L.B., individually and on behalf of her child, E.B., :
a minor, :
                                         :
                          Plaintiff, :
            -against- :            21-CV-1033 (VEC)
                                           :
NEW YORK CITY DEPARTMENT OF       :       OPINION & ORDER
EDUCATION, :
                                           :
                          Defendant. X
-----------------------------------------------------------

VALERIE CAPRONI, United States District Judge:

L.B., the mother of E.B., a child with disabilities, has sued the New York City

Department of Education (the "DOE") pursuant to the Individuals with Disabilities Education

Act ("IDEA"). The parties have cross-moved for summary judgment on the applicability of the

IDEA statute of limitations to Plaintiff's claims for tuition reimbursement for part of the 2017–

2018 school year.[1] For the reasons that follow, Plaintiff's motion is GRANTED in part and

DENIED in part, and Defendant's cross-motion is GRANTED.

## BACKGROUND

At all times relevant, E.B. was a teenaged female who qualified for special education

services. Compl., Dkt. 9 ¶¶ 16–18. Both parties agree that E.B. is disabled and that she qualified

for residential placement under the statute. Pl. Mem. of Law, Dkt. 19 at 1; Def. Mem. of Law,

Dkt. 21 at 4; SRO Decision, Dkt. 24-1 at 7.

On February 22, 2016, the DOE's Committee on Special Education ("CSE") held an

annual review to develop E.B.'s individualized education plan ("IEP") for the 2016–2017 school

---

[1]       Plaintiff labeled her motion as a motion for judgment on the administrative record. *See* Not. of Mot., Dkt.
18. The Court construes Plaintiff's motion as a motion for summary judgment.

year.  DOE Br. to IHO, Dkt. 24-3 at 38.[2]  On June 23, 2016, the DOE sent L.B. written notice of

E.B.'s IEP for the 2016–2017 school year, and soon thereafter, on July 28, 2016, the DOE sent

her a school location letter and offer of placement.  *Id.* at 39.  During the 2016–2017 school year,

E.B. attended New Leaf Academy ("New Leaf"), a full time, private therapeutic boarding school

located in Bend, Oregon.  New Leaf Letter, Dkt. 24-5 at 34.  Although an annual review of

E.B.'s IEP was scheduled for February 19, 2017, that meeting never occurred.  DOE Br. to IHO

at 38; SRO Decision at 16.

The CSE never contacted L.B. to schedule an annual review of E.B.'s IEP for the 2017–

2018 school year.  First Due Process Compl. ("DPC I"), Dkt. 24-3 at 45.  The CSE also did not

provide L.B. with prior written notice of E.B.'s IEP, or lack thereof, for the 2017–2018 school

year, and it failed to send a school location letter with an offer of placement for E.B as it had the

year before.[3]  *Id.*  On June 20, 2017, L.B. notified the CSE that she would be keeping E.B. at

New Leaf for the 2017–2018 school year and that she was seeking tuition reimbursement.  *Id.*

On June 28, 2017, L.B. filed a due process complaint with the Impartial Hearing Office of the

DOE, alleging that the DOE had denied E.B. a Free Appropriate Public Education ("FAPE") for

the 2017–2018 school year and requesting tuition reimbursement for tuition at New Leaf.[4]  *See*

*id.* at 44–47.

---

[2]      Citations to the administrative record use the ECF page numbers found at the top of each page.

[3]      The record is silent on why the DOE took none of those required steps.  Reading between the lines of the
record in this matter, E.B.'s parents apparently had the financial wherewithal to fund her education at the private
school of their choice when she was not receiving the services to which she is entitled.  In terms of the issue at hand,
all of that is of no moment, but the Court is left to wonder whether the sort of procedural failures present in this case
with this child also occur with children whose parents are far less able to self-fund an appropriate education for their
child and why that is, decades after IDEA became the law of the land.

[4]      A hearing was held on August 2, 2017, to determine the proper placement of E.B. during the pendency of
the proceedings following the filing of DPC I.  Pendency Order, Dkt. 24-3 at 48–51.  On August 18, 2017, an
Impartial Hearing Officer ("IHO") issued a decision ordering the DOE to pay tuition costs related to E.B.'s
continued placement at New Leaf during the summer of 2017.  *Id.*  Pursuant to prior rulings, E.B. was approved as a

On August 23, 2017, L.B. filed a ten-day notice letter with the CSE, alleging that it had failed to hold an annual review, develop an IEP, or make a program recommendation for E.B. for the 2017–2018 school year.  Ten Day Letter, Dkt. 24-3 at 76.  The letter stated that L.B. was "left with no alternative but to unilaterally place [E.B.] at the Grier School in Pennsylvania for the 2017–2018 school year," and that she had already signed a contract with the Grier School ("Grier").[5]  *Id*.  In fact, E.B.'s father had signed an enrollment contract with Grier for the 2017–2018 school year on March 17, 2017, and he made a non-refundable $5,000 deposit to Grier on that date.  Grier Enrollment Contract, Dkt. 24-6 at 51–52.[6]  The DOE did not respond to the mother's ten-day letter.  Pl. Mem. of Law at 2.

E.B. was subsequently enrolled at Grier, where she remained from September 5, 2017, to January 2018.  *Id*. at 2; Amend. DPC I, Dkt. 24-3 at 52.  In January 2018, E.B. transferred from Grier to the Solebury School ("Solebury"), where she remained for the balance of the 2017–2018, 2018–2019, and 2019–2020 school years.[7]  Pl. Mem. of Law at 2.

L.B. withdrew DPC I on June 28, 2018, see DOE Br. to IHO at 33, but she filed a second due process complaint ("DPC II") soon thereafter, setting forth substantially the same allegations, see Pl. Second Due Process Compl. ("DPC II"), Dkt. 24-3 at 57–60.  On September 3, 2019, L.B. filed a third due process complaint ("DPC III"), alleging that the DOE had denied E.B. a FAPE for the 2017–2018, 2018–2019, and 2019–2020 school years and seeking

---

"12-month" student.  *See* Def. Mem. of Law, Dkt. 21 at 9 n.2; Def. Reply, Dkt. 30 at 4.  E.B. graduated from New Leaf's program in August 2017.  *See* New Leaf Discharge Summary, Dkt. 24-5 at 36.

[5]    The record is not clear why L.B. indicated that E.B. would attend New Leaf when there were already plans to enroll her at Grier School.  Both schools are private boarding schools outside of the New York area.

[6]    On July 5, 2017, shortly after L.B. requested tuition reimbursement for E.B.'s attendance at New Leaf, E.B.'s father paid $34,250.00 for E.B.'s tuition for the 2017-2018 school year to Grier.  Grier Payment Stmt., Dkt. 24-6 at 53.

[7]    Solebury is also a private boarding school.  Compl., Dkt 9 ¶ 16.

reimbursement of tuition for E.B.'s placement at Grier from September 2017 to January 2018 and at Solebury from January 2018 onward.  Pl. Third Due Process Compl. ("DPC III"), Dkt. 24-3 at 61–73.[8]  The DOE never answered DPC III.  IHO Decision, Dkt. 24-3 at 6.  DPC III is the due process complaint that is at issue in this lawsuit.

The DOE moved to dismiss L.B.'s claims for the 2017–2018 school year, arguing that the complaint was filed outside IDEA's two-year statute of limitations.  Pl. Mem. of Law at 2.  The IHO denied the motion to dismiss in a one-page decision, stating without explanation that because the 2017–2018 school year began on September 5, 2017, and because the due process complaint was filed on September 3, 2019, the complaint was filed within the statute of limitations.  IHO Decision on Mot. to Dismiss, Dkt. 24-3 at 1.  At the hearing on the merits, the DOE did not contest that E.B. had been denied a FAPE for the three school years in question. IHO Decision at 6.  As a result, the IHO found in favor of Plaintiff on all claims and ordered the DOE to reimburse L.B. for the entirety of E.B.'s tuition for the 2017–2018, 2018–2019, and 2019–2020 school years.  *Id*. at 23.

The DOE appealed to the New York State Review Officer ("SRO"), challenging only the IHO decision that found L.B.'s claims for the 2017–2018 school year timely.  Pl. Mem. of Law at 3.  In a decision dated October 5, 2020, the SRO found that L.B.'s claims related to the 2017–2018 school year were barred by the two-year statute of limitations.  SRO Decision at 21. Accordingly, the SRO reversed the IHO decision granting L.B. tuition reimbursement for September 2017 to January 2018.  *Id*.  Because the DOE had not appealed the IHO's award for reimbursement of tuition at Solebury from January 2018 onward, the SRO treated that portion of the IHO decision as final and binding.  *Id*. at 13.

---

[8]        L.B. withdrew DPC II on September 5, 2019.  DOE Br. to IHO, Dkt. 24-3 at 34.

On February 4, 2021, L.B. filed this lawsuit to appeal the SRO decision denying tuition reimbursement for the period of September 2017 to January 2018.[9]  Compl. ¶ 3.  In her complaint, L.B. asserts that her claim for the 2017–2018 school year is not barred by the statute of limitations and argues that she is entitled to "prevailing party" status and repayment of her attorney's fees and costs with respect to her claims for the 2017–2018, 2018–2019, and 2019–2020 school years.  *Id*. at ¶¶ 43– 47.  On July 16, 2021, L.B. moved for judgment on the administrative record.  Not. of Mot., Dkt. 18.  On August 13, 2021, the DOE cross-moved for summary judgment.  Not. of Mot., Dkt. 20.

## DISCUSSION

### I.    Standard of Review

"In considering an IDEA claim, a district court 'must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence.'" *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 837–38 (2d Cir. 2014) (quoting *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007)).  In undertaking this independent review, courts are "restrained by our lack of specialized knowledge and educational expertise; we must defer to the administrative decision particularly where the state officer's review has been thorough and careful."  *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 138–39 (2d Cir. 2013) (cleaned up); *see also M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 243 (2d Cir. 2015) ("While the district court must base its decision on the preponderance of the evidence, it must give due weight to the administrative proceedings, mindful that the judiciary

---

[9]      Plaintiff's complaint was filed within the four-month statute of limitations established by New York Law for appealing decisions of the SRO.  *See* N.Y. Educ. Law § 4404(3)(a) (requiring that appeals of SRO decisions must be filed in the federal district court within four months of their issuance); *J.G. ex rel. J.G. v. Bd. of Educ. of Briarcliff Manor Union Free Sch. Dist.*, No. 07–CV–7245, 2008 WL 3843523, at *2 (S.D.N.Y. Aug. 14, 2008) (same).

generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." (cleaned up)).

Two factors guide the level of deference owed to the administrative opinions: "the quality of the [administrative] opinion and the court's institutional competence." *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (citation omitted). To determine whether the SRO's review has been appropriately thorough and careful, "courts must look to the factors that normally determine whether any particular judgment is persuasive, for example, whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *M.W.*, 725 F.3d at 139 (internal quotations omitted); *M.O.*, 793 F.3d at 243 (quoting *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 184) ("Deference is particularly appropriate when the state officer's review 'has been thorough and careful,' but still we do not 'simply rubber stamp administrative decisions.'"). The "institutional competence" question hinges on whether a matter involves "'persistent and difficult questions of educational policy,'" *C.L.*, 744 F.3d at 838 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 208 (1982)), or "'issues of law,' such as 'the proper interpretation of the federal statute and its requirements,'" *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005) (quoting *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997) (alteration omitted)). "[A]s a general matter, when an IHO and SRO reach conflicting conclusions, [courts should] defer to the final decision of the state authorities, that is, the SRO's decision" unless the SRO's decision "is insufficiently reasoned to merit that deference and the IHO's decision is more thorough and carefully considered . . . ." *C.L.*, 744 F.3d at 838 (cleaned up).

Here, the Court reviews the IHO and SRO decisions *de novo*.  The IHO opinion regarding the timeliness of Plaintiff's claims for the 2017–2018 school year was a one-page decision.  *See* IHO Decision on Mot. to Dismiss at 1.  The IHO's analysis of the timeliness issue was limited to one sentence, in which he stated, "I find that IDEA's two-year S.O.L. does not bar the Parent's claim for the 2017–2018 school year as the beginning of that school [year] is not more than two years from the date the Parent filed the DPC."  *Id*.  Without any reasoning or citations to authority to support his finding, the Court gives no deference to the IHO's decision.  The subsequent SRO decision provided a more detailed review of the procedural posture of the case, the legal standard, and each side's respective arguments.  *See* SRO Decision at 15–17.  But the SRO's application of the law to the facts at issue in this case was particularly thin; the SRO did not cite any authority, and he made no finding when, exactly, Plaintiff's claim accrued.  *Id.* at 17.  With respect to institutional competence, the timeliness of a claim under the statute of limitations is an issue of law; it is not a difficult question of education policy.

In short, given the dearth of authority in the relevant portions of the two administrative decisions, and the fact that the issue in dispute concerns a matter of law, the Court will review Plaintiff's claims *de novo*.

## II.    IDEA Statute of Limitations

IDEA empowers parents and guardians to file due process complaints before an IHO "with respect to any matter relating to the identification, evaluation, or educational placement of [their] child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6)(A).  The statute requires a parent or agency to "request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the

alleged action that forms the basis of the complaint . . . ."[10]  20 U.S.C. § 1415(f)(3)(C).

Accordingly, to determine when Plaintiff's cause of action accrued, the Court must determine (1)

the action that forms the basis of her complaint, and (2) when Plaintiff knew or should have

known about that action.[11]

### III.    Plaintiff's Claims for 2017–2018 School Year Are Time Barred

#### A.  The Action that Forms the Basis of Plaintiff's Complaint

IDEA plaintiffs may file a complaint with respect to "any matter relating to the

identification, evaluation, or educational placement of [their] child, or the provision of a free

appropriate public education to such child."  20 U.S.C. § 1415(b)(6)(A).  Often the action that

forms the basis of an IDEA due process complaint is the denial of FAPE, which occurs following

substantive or procedural violations of IDEA.  *See R.E.*, 694 F.3d at 189–90 (discussing the

circumstances under which procedural and substantive violations of IDEA amount to the denial

of a FAPE).

Substantive violations of IDEA may include the failure to propose an IEP or deficiencies

in the IEP itself.  *Id.*; *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 238–39 (2009).  School

districts are required to have a written IEP in effect for each child with a disability by the

---

[10]    There are two exceptions to the two-year statute of limitations, but Plaintiff has not argued that either exception applies here.  *See* DPC III, Dkt. 24-3; Compl. Dkt. 9.  Accordingly, the Court does not consider the exceptions.

[11]    Plaintiff, by contrast, contends that the IDEA statute of limitations begins to run when the parties have "fixed their respective legal positions," *e.g.*, when a plaintiff knows to a legal certainty that a violation of IDEA has occurred.  *See* Pl. Mem. of Law, Dkt. 19 at 5.  To support that contention, Plaintiff cites the general common law principle that a claim accrues when "the plaintiff has a complete and present cause of action."  Pl. Mem. of Law at 4 n.5 (quoting *K.A. v. City of N.Y.*, 413 F. Supp. 3d 282, 294–95 (S.D.N.Y. 2019), and citing several other cases that articulate the same general principle or apply it to other federal statutes).  Plaintiff is correct that claims generally do not accrue until the plaintiff has a complete and present cause of action; however, the Second Circuit has explicitly held that IDEA plaintiffs have a complete and present cause of action *when they know or should have known about the action that forms the basis of their complaint*.  *See Somoza v. N.Y.C. Dep't of Educ.*, 538 F.3d 106, 114–116 (2d Cir. 2008) (citing 20 U.S.C. § 1415).  Legal certainty is not required.  *Id.* at 115 (finding that a plaintiff's claims were "complete and present" when she discovered that the DOE had denied her child a FAPE).  Accordingly, Plaintiff's argument that a claim accrues under IDEA when her legal position is fixed is incorrect as a matter of law.

beginning of the school year, 20 U.S.C. § 1414(d)(2)(A), and, in New York State, the school

year begins annually on the first day of July. *See* N.Y. Educ. Law § 2(15). Thus, failure to

provide a written IEP by July 1 constitutes a substantive denial of FAPE. *C.W.L. and E.L. v.*

*Pelham Union Free Sch. Dist.*, 149 F. Supp. 3d 451, 465 (S.D.N.Y. 2015). Moreover,

"[m]ultiple procedural violations may cumulatively result in the denial of a FAPE even if the

violations considered individually do not." *R.E.*, 694 F.3d at 190.

   Here, the basis of the pertinent portion of Plaintiff's due process complaint is the alleged

denial of a FAPE for the 2017–2018 school year. DPC III at 63. Specifically, Plaintiff contends

that the DOE: failed to hold an annual review for E.B. for the 2017–2018 school year; failed to

provide L.B. with prior written notice of a change, or lack thereof, to E.B.'s IEP; failed to send a

school location letter with a placement for E.B. for the 2017–2018 school year; and failed to

produce an annual IEP by the first day of the 2017–2018 school year. *Id*. Those failures —

according to L.B. and conceded by the DOE — constitute the denial of a FAPE. Def. Req. for

Rev. by SRO, Dkt. 24-2 at 7–8; IHO Decision at 11; SRO Decision at 13. Because the DOE did

not contest that it had denied E.B. a FAPE, the IHO Decision did not probe whether the denial of

a FAPE was procedural, substantive, or both. IHO Decision at 11 (finding that "the DOE's

failure to present a case at the hearing is a concession that it denied the student FAPE . . . ."). In

any case, there were clearly both procedural and substantive violations of IDEA that amounted to

the denial of a FAPE. The question, then, is when Plaintiff knew or should have known that E.B.

had been denied a FAPE for the 2017–2018 school year.

   **B.  When L.B. Knew or Should have Known that E.B. Was Denied a FAPE for**
       **the 2017-18 School Year**

   IDEA claims accrue on the date that a plaintiff "knew or should have known about the

alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(b)(6)(B); *Somoza v.*

*N.Y.C. Dep't of Educ.*, 538 F.3d 106, 114 (2d Cir. 2008).  Determining when a parent knew or should have known is an inherently fact-specific inquiry.  *K.H. v. N.Y.C Dep't of Educ.*, No. 12-CV-1680, 2014 WL 3866430, at *16 (E.D.N.Y. Aug. 6, 2014).  In this case, L.B. knew or should have known that the DOE had denied E.B. a FAPE at least by March 17, 2017, the date on which E.B.'s father enrolled her in a new private boarding school and made a non-refundable deposit.  Accordingly, Plaintiff's claim accrued on that date.[12]

### 1. E.B.'s Parents Demonstrated Their Knowledge that the DOE Had Failed to Develop E.B.'s IEP When They Enrolled Her in a New School

Under established Second Circuit precedent, an IDEA claim for tuition reimbursement accrues when the parents of a child who is entitled to an IEP unilaterally remove the student from school, place him or her in a new program, and make a payment to the new school.  *K.C. v. Chappaqua Cent. Sch. Dist.*, No. 16-CV-3138, 2018 WL 4757965 at *14 (S.D.N.Y. Sept. 30, 2018) (collecting cases); *R.B. ex rel. A.B. v. Dept. of Educ. N.Y.*, No. 10-CV-6684, 2011 WL 4375694 at *4 (S.D.N.Y. Sept. 16, 2011).  In *R.B.*, the plaintiff was found to have had reason to know his child had been denied a FAPE when he made a non-refundable deposit to reserve the child a seat in a private school.  *R.B.*, 2011 WL 4375694 at *4.  The court reasoned that, by submitting a deposit, the plaintiff suffered an actionable injury because he had "exercised his right under IDEA to place his child in the private school of his choice with the intention of seeking reimbursement from the DOE."  *Id.*; *see also M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (holding that the parents knew or should have known about the action

---

[12]     Plaintiff argues that her claim accrued when she became certain the DOE would not offer E.B. an IEP, which, according to her, occurred on September 6, 2017, the date DOE's deadline to answer her ten-day letter passed.  Pl. Mem. of Law at 4.  But Plaintiff's argument rests on her faulty understanding of when claims accrue under IDEA.  *See* note 11, *supra*.

that formed the basis of their complaint from the moment they sustained a "substantial monetary loss" by paying tuition at a new school).

Here, E.B.'s father signed an enrollment contract and made a $5,000 deposit with Grier for the 2017–2018 school year on March 17, 2017.[13]  Grier Enrollment Contract at 51–52.  As in *R.B.* and *M.D.*, the enrollment of E.B. in a new school combined with a substantial monetary commitment triggered the statute of limitations.  Accordingly, the statute of limitations expired on March 17, 2019, six months before L.B. filed the operative due process complaint, making her claim time-barred under the two-year statute of limitations.

> ### 2.  L.B. Unequivocally Knew E.B. Had Been Denied a FAPE by June 28, 2017

As discussed above, Second Circuit law is clear that enrollment at a new school and unilateral payment to that school triggers the statute of limitations for IDEA claims.  That said, accepting that parents who are able to do so may have many reasons for reserving their special needs child a seat in a new private school aside from "knowing" that the DOE is not going to provide their child with a FAPE,[14] in this case, there is no reason to speculate whether E.B.'s

---

[13]      Although E.B.'s father is not the Plaintiff in this action, L.B. appears to have been entirely aligned with E.B.'s father on this issue.  *See, e.g.*, Ten Day Letter, Dkt. 24-3 at 76 (informing the CSE that "I [referring to L.B.] have signed a contract with the Grier School.").

[14]      Although the Court recognizes that there are many reasons why parents may unilaterally enroll their child in a new school without prior DOE approval, courts trigger the statute of limitations upon the payment of tuition at the new school based on the principle that DOE is entitled to notice of the parents' dissatisfaction with their child's previously approved education placement.  *See Mr. & Mrs. D. v Southington Bd. of Educ.*, 119 F. Supp. 2d 105, 112 (D. Conn. 2000), *aff'd*, 334 F.3d 217 (2d Cir. 2003).  When the record indicates that the parents "were familiar with the procedural safeguards of the IDEA, and were also not satisfied with the education [at the prior approved school]," their unilateral decision to transfer their child to a new school denies the DOE the opportunity to propose an appropriate IEP for the child before the school year begins.  *Id.* at 113.  Such unilateral action contravenes the purpose of IDEA, which is to "promote cooperation between the school and the parent."  *Id.* (citing *Sch. Comm. of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 372 (1985)).  Moreover, "[t]he purpose of the statute is not to allow plaintiffs to wait to realize the benefit of a new placement.  The triggering event is when the plaintiffs know or should know that the injury, an inappropriate education, has occurred.  In this case, the parents were aware of the alleged injury to their child when they unilaterally placed her out of what they judged to be an inferior school district."  *Mr. & Mrs. D*, 119 F. Supp. 2d at 113.

parents actually knew that she had been denied a FAPE for the 2017–2018 school year prior to

September 2017 — they told the DOE just that on June 28, 2017, when L.B. filed her first due

process complaint.  *See* DPC I at 45.  Thus, even if E.B.'s parents had not paid a deposit to Grier

and even if Second Circuit law were different, L.B.'s claim would still be time barred.

      L.B. knew or had reason to know that E.B. was denied a FAPE for the 2017–2018 school

year when the DOE failed to meet its annual obligation to develop an IEP for E.B.[15]  DPC I at

45.  That knowledge was confirmed by L.B. when she filed a due process complaint on June 28,

2017, in which she expressly alleged that the DOE had denied E.B. a FAPE.[16]  *Id.*  Thus, even if

payment to reserve E.B. a seat at Grier did not trigger the statute of limitations, the cause of

action for reimbursement of tuition for the 2017–2018 school year had clearly accrued by June

28, 2017, when L.B. filed her first due process complaint.  That being the case, to be timely, her

---

[15]     In *K.H.*, the district court held that the parent knew or should have known about the basis of her complaint when the DOE failed to convene an IEP meeting or create an IEP for her child.  *K.H. v. N.Y.C Dep't of Educ.*, No. 12-CV-1680, 2014 WL 3866430, at *20 (E.D.N.Y. Aug. 6, 2014) (citing *Draper v. Atlanta Indep. Sch. Sys.*, 480 F. Supp. 2d 1331, 1340 (N.D. Ga. 2007), *aff'd*, 518 F.3d 1275 (11th Cir. 2008) (finding that a claim for denial of FAPE accrued as soon as the mother became aware that there was a problem with her child's education and the local education agency was not assessing her child)).

     Although it is difficult to pinpoint when, exactly, Plaintiff should have realized that the DOE had failed to fulfill its obligations, in light of the fact that DOE had properly carried out its obligations under IDEA for the 2016–2017 school year but then failed to take any of those same actions the following year, L.B. should have been aware that DOE was not complying with its IDEA obligations by the end of the 2016–2017 school year.  Precisely when that would have been obvious is unknown, but it is clear that L.B. knew the DOE was not complying at least by June 20, 2017, when she notified the CSE that she had unilaterally decided to keep E.B. in private school and was seeking tuition reimbursement.  DPC I, Dkt. 24-3 at 45–46.

[16]     In her first due process complaint, L.B. alleged that the DOE denied her daughter a FAPE by: failing to contact her or schedule an annual review for the 2017–2018 school year; failing to develop an IEP for the 2017–2018 school year; failing to provide her with prior written notice of any changes, or lack thereof, to E.B.'s IEP; and failing to provide her with a final notice of recommendation with a placement for E.B. for the 2017–2018 school year.  *See* DPC I at 45.  Those claims are identical to the claims in the operative due process complaint at issue in this lawsuit.  *See* DPC III at 63–73.

due process complaint had to be filed by June 28, 2019.  It was not.  Accordingly, the claim is time-barred.[17]

In short, Plaintiff's claims for the 2017–2018 school year are time barred, and the DOE's motion for summary judgment is granted.[18]

## IV.   Prevailing Party Status and Attorney's Fees

Because Plaintiff is not the prevailing party as to her claim for tuition reimbursement at Grier during the 2017–2018 school year, she is not entitled to prevailing party status pursuant to 20 U.S.C. § 1415(i)(3)(A) or (B) with respect to that claim.  But E.B.'s mother was the prevailing party in her claims for the portion of the 2017–2018 school year E.B. spent at Solebury as well as for the 2018–2019 and 2019–2020 school years.  *See* Compl. ¶ 46.  Although the DOE denied in its answer that E.B.'s mother is entitled to prevailing party status for those years, Ans., Dkt. 14 ¶ 46, the DOE did not appeal to the SRO or to this Court the IHO's award of tuition reimbursement for the portion of the 2017–2018 school year E.B. spent at Solebury or for the 2018–2019 and 2019–2020 school years, Compl. ¶ 33 n.3; *see also* SRO Decision at 13 ("Neither party has appealed the IHO's determinations that the district failed to offer the student a FAPE for the 2018–19 and 2019–20 school years . . . .  Therefore, the IHO's determinations on

---

[17]    The IHO and SRO reached different outcomes as to the accrual date of Plaintiff's claim.  Although the SRO did not pinpoint an exact date on which her claims accrued, the SRO determined that Plaintiff's claims accrued *no later* than August 23, 2017, when she sent the ten-day letter.  SRO Decision, Dkt. 24-1 at 16–17.  The Court agrees with the SRO that Plaintiff certainly knew that the DOE had failed to fulfill its obligations under IDEA when she sent the ten-day letter on August 23, 2017.  *See* Ten Day Letter at 76 (outlining the DOE's failure to hold an annual review, develop an IEP, and make a program recommendation for E.B, and informing the CSE that she intended to place E.B. at Grier).  Although the Court agrees that Plaintiff certainly knew that her daughter had been denied a FAPE on that date, for the reasons described in text, the record also makes clear that she knew of the basis of her claims well before that date.

[18]    Because her claim is time-barred, L.B. cannot compel the DOE to reimburse her for E.B.'s tuition at Grier from September 2017 to January 2018.  For reasons unknown, the DOE did not appeal the IHO's award of tuition reimbursement for E.B.'s attendance at Solebury from January 2018 to the end of the 2017–2018 school year.  SRO Decision at 13.  Because the DOE did not appeal that portion of the IHO's decision, the SRO properly treated that argument as waived and found that portion of the IHO decision to be final and binding.  *See id.*  The DOE has not asked this Court to disturb that ruling.

these issues have become final and binding on both parties and they will not be reviewed on appeal."). Thus, any arguments as to the validity of the IHO's decision finding in Plaintiff's favor for those school years have been waived.

Accordingly, Plaintiff is entitled to payment of some of the reasonable attorney's fees and costs she requested pursuant to 20 U.S.C. § 1415(i)(3)(A) and (B). Plaintiff's request that she be declared the prevailing party with respect to her claims pertaining to the portion of the 2017–2018 school year spent at Grier is denied but her request pertaining to the portion of the 2017–2018 school year spent at Solebury and the 2018–2019 and 2019–2020 school years is granted.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a judgment on the administrative record is GRANTED in part and DENIED in part and Defendant's motion for summary judgment is GRANTED. By no later than **Friday March 18, 2022**, the parties must file a joint letter updating the Court on the prospect for settlement of the fee issue, including whether the parties would like a referral to their assigned magistrate judge for a settlement conference.

The Clerk of Court is respectfully directed to close the open motions at docket entries 18 and 20.

**SO ORDERED.**

**Date:  March 8, 2022**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

14